IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANDERSON N. WHITT,** } | |
| } | |
|     **Plaintiff** } | |
| } | |
| v. } | Civil Action No.: 2:14-CV-01089-RDP |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Acting Commissioner of Social Security** } | |
| } | |
|     **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Anderson N. Whitt brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

This action arises from Plaintiff's applications for DIB and SSI filed on April 19, 2011, alleging disability beginning May 1, 2010. (Tr. 96-97, 191).  On August 8, 2011, Plaintiff's applications were denied by the Social Security Administration. (Tr. 96-97). Plaintiff requested and received a video hearing on January 24, 2013. (Tr. 19).  Plaintiff appeared in Birmingham, Alabama and testified before Administrative Law Judge L. Raquel Bailey Smith (hereinafter "ALJ"), presiding from St. Louis, Missouri. (Tr. 19).  Norma Stricklin, an impartial vocational expert, also appeared at the hearing. (Tr. 19, 40-44).

In her decision issued January 31, 2014, the ALJ determined that Plaintiff was not disabled under the Act from the time of Plaintiff's alleged onset date through the date of her decision. (Tr. 59). Plaintiff appealed the ALJ's decision to the Appeals Council and his request for review was denied in a letter dated April 8, 2014. (Tr. 1-3). Plaintiff has exhausted his administrative remedies and has filed a timely action in this court. Accordingly Plaintiff's case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     FACTS

At the time of Plaintiff's ALJ hearing, Plaintiff was fifty-one years old and had completed the twelfth grade. (Tr. 191). Plaintiff previously worked for more than sixteen years as a material handler, machine tender, and job setter for an automobile manufacturer. (Tr. 34-35, 231, 236). Plaintiff testified that he stopped working in March 2009 after his employer began downsizing and offered him an early retirement buyout. (Tr. 38-39, 230). Plaintiff alleges that his disability, which he contends began on May 1, 2010, is due to arthritis, diabetes, and hypertension[1]. (Tr. 230).

The medical evidence of record shows that initially in July 2010, Plaintiff presented to the Veterans' hospital complaining of right-side neck pain. (Tr. 54, 463). On physical examination, no abnormalities were recorded. (Tr. 463-64). On August 6, 2010, Plaintiff reported that his neck was "feeling fine" and denied experiencing any other joint or muscle pain. (Tr. 454). However, twenty days later, Plaintiff presented with complaints of shoulder and hip pain, and indicated that he had experienced shoulder pain for a few years, and that his hip pain began within the past year. (Tr. 445). On examination, Dr. Cowley found reduced range of motion with

---

[1] Plaintiff has a history of hypertension and is prescribed medication for his high blood pressure. The medical evidence of record reflects that, when compliant with medication, Plaintiff's blood pressure is controlled. (*See* Tr. 422, 424, 982, 992, 1257). The medical record also reflects that Plaintiff has a history of hyperlipidemia, and that when compliant, Plaintiff's high cholesterol is controlled with medication. (*See* Tr. 424, 429, 1260-63).

tenderness in Plaintiff's right shoulder, and full range of motion with tenderness in Plaintiff's right hip. (Tr. 445). Related x-rays showed mild degenerative disease of the shoulder with no acute abnormality, and mild degenerative arthrosis of his right hip. (Tr. 357-59). Plaintiff was initially prescribed Etodolac, a non-steroidal anti-inflammatory drug (NSAID), which was later changed to another NSAID, Meloxicam. (TR. 423-24, 446).

      The record contains March 2011 documents indicating that Plaintiff presented to UAB Medical West's Emergency Room with complaints of back and knee pain after reportedly injuring himself by tripping and falling. (Tr. 291). Related x-rays indicated mild to moderate degenerative changes in Plaintiff's lumbar spine (Tr. 297), but noted no significant change in Plaintiff's right hip. (Tr. 356). In May 2011, an MRI of Plaintiff's pelvis showed severe osteoarthritis of his right hip (Tr. 354), and Plaintiff was evaluated by Dr. Marshall, an orthopedic surgeon, in July 2011. (Tr. 487-88). Dr. Marshall's notes indicate that Plaintiff reported that he was ambulatory with his cane and that he was able to walk to the store and carry out his activities with increasing difficulty (Tr. 487). Plaintiff also reported that he was taking Lortab for pain, but not his prescription NSAIDs. (Tr. 487). Dr. Marshall found that Plaintiff's range of motion was reduced; however, because Plaintiff had full strength without sensory loss, Dr. Marshall prescribed Plaintiff Meloxicam and scheduled a six-month follow-up. (Tr. 488). When Plaintiff returned in January 2012, the condition of his right hip had worsened and was "essentially bone to bone." (Tr. 587, 674-75). In April 2012, Plaintiff had a right-total-hip arthroplasty, followed by one month of in-home care and rehab post-op. (Tr. 801-50, 876).

      In May 2012, after her surgery, Plaintiff walked with a cane and reported that his strength was improving. (Tr. 910). Dr. Calvert, Plaintiff's orthopedic surgeon, found that Plaintiff had a good range of motion in his right hip, was neurovascularly intact, and pointed to x-rays showing

3

good alignment without signs of loosening or wear. (Tr. 910). Dr. Calvert opined that by the time Plaintiff had fully recovered, he would be able to work a normal eight-hour workday, stand four to five hours, and carry forty to fifty pounds. (Tr. 910). In August 2012, Plaintiff no longer required a cane, and was instructed to taper off Lortab and to resume taking NSAIDs. (Tr. 1159). In November 2012, Plaintiff admitted that he was not taking his medication regularly; nevertheless, he reported that his right hip was "doing well." (Tr. 1260).

In his January 2013 hearing, Plaintiff testified that he is unable to work because of diabetes and arthritis. (Tr. 26-27). Plaintiff testified that although he is capable of doing household chores and driving his elderly mother, he must lay down for about two hours during an eight hour day. (*See* Tr. 25, 31). Plaintiff reported that his high blood sugar makes him weak and tired, and that his diabetes medication causes gastrointestinal problems. (Tr. 30). Plaintiff testified that he has difficulties lifting, standing, walking, and sitting (*See* Tr. 27-28, 30-31), and added that walking, yard-work, household chores, and moving increases his pain. (Tr. 29-30). Plaintiff estimated that, even when medicated, his pain is an eight out of ten on the pain scale. (Tr. 29-30).

At Plaintiff's hearing, Norma Stricklin, a vocational expert ("VE"), indicated that Plaintiff's past work included employment as a material handler, production machine tender, and job setter. (T. 40-41). In response to questions posed by the ALJ, the VE testified that an individual, similarly situated to Plaintiff in all relevant aspects, could not perform Plaintiff's past work. (T. 42). However, the VE determined that such a similarly situated individual could perform other work that is available in significant numbers within the national economy. (*See* Tr. 42-43).

**III.    The ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Work activity involving significant physical or mental activities is "substantial," while "gainful" work is done for pay or profit. *See* 20 C.F.R. § 404.1572(a)-(b). A claimant is presumed to have the ability to engage in substantial gainful activity when his earnings from employment rise above the amount allowed under 20 C.F.R. §§ 416.974, 416.975. Engaging in substantial gainful activity precludes a claim of disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment, or combination thereof, that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, a claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If a claimant does not meet the listed criteria, the ALJ may still find disability, after completing the claimant's residual functional capacity ("RFC") assessment. 20 C.F.R. § 404.1520(e). The ALJ applies the RFC assessment to determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If capable of performing past relevant work the claimant is not disabled; however, a finding that the claimant cannot perform past relevant work, requires the ALJ to determine if he is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 404.1520(g). Here, the burden shifts to the ALJ to establish that, given

5

the claimant's RFC, age, education, and work experience, he is capable of making a successful adjustment to other jobs, available in substantial numbers within the national economy. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

In the present case, after considering the record in its entirety, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2010. (Tr. 51). The ALJ further found that Plaintiff suffers from a combination of severe impairments, including status post right total hip arthroplasty; degenerative joint disease of the right shoulder and lumbar spine; diabetes mellitus; and incongruous left homonymous hemianopsia.[2] (Tr. 51). However, the ALJ determined that Plaintiff's impairments, individually and in combination, neither met nor medically equaled Listings 1.02, 2.03, or 9.00. *See* 20 C.F.R. § 404.1520(a)(4)(iii). (Tr. 52).

In light of objective medical evidence of record, the ALJ noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (*See* Tr. 53-58). The ALJ found that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: Plaintiff may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, and may occasionally reach overhead; but must be allowed to sit occasionally. (Tr. 52). Plaintiff cannot climb ladders, ropes, and scaffolds; perform overhead work with his right upper extremity; nor drive commercially; and must avoid exposure to hazards and extreme cold. (*See* Tr. 52-53).

The ALJ found that though unable to perform past relevant work, Plaintiff was capable of making a successful adjustment to other jobs that are available in significant numbers within the national economy. (Tr. 58-59). Accordingly, the ALJ ruled that from May 1, 2010 to January 31, 2013, Plaintiff was not disabled under the Act, and therefore, was not entitled to disability benefits. (Tr. 59).

---

[2] The ALJ found that Plaintiff's hypertension and hyperlipidemia were non-severe. (Tr. 52).

**IV.     Plaintiff's Argument for Reversal or Remand**

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded. (*See* Pl.'s Mem. at 5). Plaintiff presents three arguments: (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ failed to properly assess his ability to alternate sitting and standing as required by SSR 96-9p; and (3) the ALJ failed to properly apply the pain standard. (Pl.'s Mem. at 5).

**V.      Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). The Commissioner's findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, nor substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Considering the final decision as whole, the court may only decide if the decision is reasonable and supported by substantial evidence, meaning evidence "a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). When substantial evidence supports the Commissioner's decision, the court must affirm, even if the evidence preponderates to the contrary. *See Id*. However, the court notes that judicial review, although limited, "does not yield automatic affirmance" of the ALJ's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI.     Discussion[3]

The court has carefully reviewed the record and the parties' respective positions. After such review, the court rejects Plaintiff's arguments for reversal or remand and concludes that the ALJ properly applied legal standards, and her decision is supported by substantial evidence.

### A.     Substantial Evidence Supports the ALJ's RFC Finding

Plaintiff argues that the ALJ's RFC assessment failed to address Plaintiff's limitations prior to, and immediately following, his hip replacement; during this alleged closed period of disability his functional limitations caused by his right hip arthritis were greater than at other times during the relevant period; and, as a result, the ALJ's RFC assessment is not supported by substantial evidence. (*See* Pl.'s Mem. at 6-9). The court disagrees.

Plaintiff has failed to provide substantial evidence showing that any temporary limitation resulting from Plaintiff's worsening right-hip arthritis and surgery satisfies the Act's durational requirement. To establish a disability, Plaintiff must provide evidence showing the existence of impairments and an inability to work for a continuous period of at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Plaintiff contends that this closed period of disability began on May 5, 2011 and lasted through either May 15, or August 6, 2012; however, substantial evidence shows that Plaintiff's right hip arthritis was not disabling as of May 2011. (*See* Pl.'s Mem. at 7-9). Medical records indicate that Plaintiff continued to receive conservative treatment, even after a May 2011 MRI showed severe osteoarthritis in his right hip. (*See* Pl.'s Mem. at 7). *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008)("A doctor's conservative medical treatment for a particular condition tends to negate the claim of disability.")(citing *Wolfe v. Chater*, 86 F. 3d 1072, 1078 (11th Cir. 1996)).

---

[3] Although Plaintiff claims physical and visual impairments, on appeal, he refers only to musculo-skeletal impairments, and accordingly waives any challenge regarding his diabetes, visual impairments, hypertension, and hyperlipidemia. (*See* Pl.'s Br. at 6-17). *See Hernandez v. Comm'r*, 433 F. App'x 821, 823 (11th Cir. 2011).

In July 2011, both Drs. Badewa and Marshall found that Plaintiff retained full strength in his right hip without sensory loss. (*See* Tr. 482-83). Upon examination, Dr. Marshall prescribed Plaintiff Meloxicam, and requested a six month follow-up. (*See* Tr. 482-83, 488).[4]

Plaintiff's conservative treatment ended in January 2012 when doctors recommended surgery. (Tr. 587, 674-75). In April 2012, Plaintiff received a total right hip arthroplasty, followed by one month of in-home care and rehabilitation. (Tr. 55, 587, 674-75, 801-50, 876). May 2012 medical records indicate that Plaintiff was able to walk with a cane, and noted improvements in his strength and range of motion (Tr. 801-50, 876). Further, by August 2012, Plaintiff was able to walk unassisted. (Tr. 1159).

Even if the court were to find that Plaintiff's RFC was temporarily reduced between January 2012 and either May or August 2012, such a finding would be inconsequential in any event because Plaintiff's alleged closed disability period does not satisfy the Act's one year durational requirement. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Accordingly, substantial evidence supports the ALJ's RFC finding, and therefore, her findings in this respect are due to be affirmed.

> **B.  The ALJ Properly Articulated Plaintiff's Need to Alternate Sitting and Standing**

Plaintiff argues that the ALJ failed to properly articulate Plaintiff's ability to alternate sitting and standing as required under Social Security Ruling (SSR) 96-9p. (Pl.'s Mem. at 10-12). *See* SSR 96-9p, 1996 WL 374180 (S.S.A.)(providing, in part, that an ALJ's "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.").

---

[4] Additionally, in July 2011 Plaintiff admitted his non-compliance in taking his medications, and reported that he was ambulatory with the help of an un-prescribed cane, and able to carry out his activities of daily living. (Tr. 487). (Tr. 487; *See* Tr. 423-24, 446 (indicating Plaintiff had previously been prescribed Meloxicam)). *See Ellison*, 355 F. 3d at 1275 (a plaintiff's noncompliance with prescribed treatment may be used as a factor for discounting allegations of disability).

Specifically, Plaintiff claims that the ALJ's RFC finding that requires him to be given the opportunity to sit occasionally, is too vague and indefinite, and warrants remand for clarification. (*See* Pl.'s Mem. at 10-12). Plaintiff's argument is without merit.

Agency rulings and opinions define "occasionally" as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374180, at *3 (S.S.A.); *see also* SSR 83-14, 1983 WL 31254, at *2 (S.S.A)("from very little up to one third of the time"); SSR 83-10, 1983 WL 31251, at *8 ("Occasionally means occurring from very little up to one-third of the time … [and] should generally total no more than about 2 hours of an 8-hour workday"); *see e.g.*, Program Operations Manual System (POMS) DI 25001.001(54)("the activity occurs at least once up to one-third of an eight hour workday."). Additionally, while being questioned by the ALJ, the VE appeared to understand, without clarification, the question containing the limitation for occasional sitting. (*See* Tr. 42). For the reasons stated above, the court finds the ALJ properly articulated Plaintiff's need to alternate sitting and standing.

Plaintiff also alleges that this limitation for occasional sitting is contrary to the definition of light work in the Dictionary of Occupational Titles (DOT). For this reason, he asserts the ALJ committed reversible error by relying on the VE's testimony. (*See* Pl.'s Mem. at 13.). Plaintiff's claim is off the mark. Under Social Security Ruling 00-4p, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. *See* SSR 00-4p, 2000 WL 1898704 *2 (S.S.A.). Moreover, an ALJ must inquire about apparent conflicts between the VE's testimony and the DOT. *See id.*

Here, the ALJ asked if there were any conflicts between the VE's testimony and the DOT. The VE replied that her testimony was consistent with the information within the DOT.

(Tr. 44). At the hearing, Plaintiff neither questioned nor identified the existence of potential inconsistencies between the VE's testimony and the DOT. (Tr. 44). Without challenge, the ALJ was not required to question the VE further regarding the possibility of an inconsistency between the VE's testimony and DOT, and properly relied on the VE's testimony. *See Hurtado v. Comm'r of Soc. Sec.*, 425 Fed. App'x 793, 795-96 (11th Cir. 2011); *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002).

Additionally, and in any event, Plaintiff has failed to show the existence of a conflict between the information found in the DOT and the VE's testimony. Plaintiff merely asserts that the DOT defines "light work" as requiring "standing for up to six hours a day in 'an upright position without moving about,'" yet he has not provided any source for this purported definition. (*See* Pl.'s Mem. at 13).

Here, the VE testified that despite Plaintiff's limitations, Plaintiff would be able to perform light work as a cashier, shipping and receiving clerk, and ticket taker. (Tr. 42-43). Under the DOT, light work includes employment that (1) requires a significant degree of walking or standing, (2) requires mostly sitting with pushing and/or pulling of arm or leg controls, or (3) requires constant pushing and/or pulling of materials that are negligible in weight at a production rate pace. *See* U.S. Dep't of Labor, DOT pp. 183, 204, 253 (4th ed. 1991)(*available at* 1991 WL 671840; 1991 WL 672133; and 1991 WL 672863, respectively.).

Plaintiff argues that the DOT's definition of light work is inconsistent with the "occasional" sit/stand option articulated by the ALJ's RFC finding. But he has not cited any specific vocational authority in support of his argument, other than the DOT itself.[5] The VE

---

[5] Furthermore, evidence provided by a VE may include information not included in the DOT. *See* SSR 00-4p, 2000 WL 1898704, *2. The regulations also acknowledge that the DOT may not contain all relevant information, and allow the VE to obtain information about a particular job's requirements from outside sources,

11

testified that Plaintiff was able to perform other work available in the national economy at the light exertional level, which would also allow Plaintiff to sit occasionally. (*See* Tr. 42-43). Plaintiff has not shown that he is unable to perform the jobs identified by the ALJ. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); *See also Hurtado v. Comm'r of Soc. Sec.*, 425 Fed. App'x 793, 795-96 (11th Cir. 2011)("the VE is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job."). For the above reasons, the ALJ properly accepted the VE's testimony, elicited in response to the ALJ's proper articulation of Plaintiff's need to alternate sitting and standing. The ALJ's findings are supported by substantial evidence and due to be affirmed.

### C. Substantial Evidence Supports the ALJ's Credibility Determination

Plaintiff argues that the ALJ failed to properly evaluate the credibility of his subjective testimony. (*See* Pl.'s Mem. at 14-17). The court disagrees. For the reasons given below, the ALJ properly applied the pain standard and adequately articulated reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints.

To establish a disability based on testimony of pain and other symptoms, a claimant must show evidence of an underlying medical condition, and either objective medical evidence confirming the severity of the alleged pain, or that the objectively determined medical condition could reasonably be expected to produce the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. § 416.929(a). Once an underlying impairment that could reasonably be expected to produce the claimant's pain or symptoms is identified, the ALJ must evaluate the intensity, persistence, and functionally-limiting effects of the symptoms to

---

including reliable publications or the VE's own experience in job placement or career counseling. *See* 20 C.F.R. § 404.1566(d)(1)(5); SSR 00-4p, 2000 WL 1898704, *2-3.

determine the extent to which they affect the claimant's capacity for work. *See* 20 C.F.R. § 416.929(c)(1).

Furthermore, it is within the ALJ's province to determine questions of credibility. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). An ALJ is not obligated to accept a claimant's subjective allegations of pain or symptoms, and may properly consider the credibility of a claimant when determining disability. *See Wilson*, 284 F.3d at 1225-26. When an ALJ rejects a claimant's testimony concerning pain or symptoms on credibility grounds, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the allegations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And a reviewing court may not disturb an ALJ's clearly articulated credibility finding when supported by substantial evidence in the record. *See Foote*, 67 F.3d at 1562.

Here, the ALJ properly applied the pain standard. After finding that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 53-56). Next, the ALJ articulated specific reasons for his credibility finding, including these findings: (1) Plaintiff's subjective complaints were inconsistent with his treatment history; (2) Plaintiff was noncompliant with his prescribed treatment; (3) the objective evidence of record failed to confirm the severity of Plaintiff's alleged symptoms; and (4) Plaintiff's activities of daily living were inconsistent with his alleged impairments. (Tr. 20-23). Each of these findings is supported by substantial evidence.

There is also substantial evidence in the record indicating that Plaintiff's subjective complaints were inconsistent with his treatment history. Plaintiff had a right total hip arthroplasty in April 2012. But from the date of his alleged disability onset, May 2010, through March 2011,

x-rays of Plaintiff's hip showed only mild degenerative changes. (Tr. 356, 358-59, 876). Moreover, Plaintiff received conservative treatment until January 2012, when his condition deteriorated and his doctors recommended surgery. (Tr. 423-24, 446, 488, 674-75). *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008). One-month after surgery, and after finding that Plaintiff was able to walk with a cane, Dr. Calvert found that Plaintiff had good range of motion in his right hip, and reported improvements in his strength. Dr. Calvert opined that Plaintiff would be able to work a normal eight hour workday and carry forty to fifty pounds. (Tr. 910). By August 2012, Plaintiff was able to walk without assistance, and by November, Plaintiff reported that his right hip was doing well. (Tr. 1159, 1260).

There is also substantial evidence in the record which indicates Plaintiff was noncompliant with his prescribed treatment. Treatment records show that (1) in July 2011, Plaintiff denied using NSAIDs, despite having been prescribed them by Dr. Cowley, and (2) in November 2012, Plaintiff acknowledged not taking his medication as prescribed. (Tr. 423, 487, 1260). *See Ellison*, 355 F.3d at 1275 (stating noncompliance with prescribed treatment may be used as a factor for discounting allegations of disability.).

Substantial evidence also supports the ALJ's conclusion that the objective evidence of record fails to confirm the severity of Plaintiff's alleged symptoms. X-rays of Plaintiff's right shoulder showed mild degenerative disease, but not an acute abnormality (Tr. 357-58). Moreover, an x-ray of Plaintiff's lumbar spine showed mild degenerative changes at L4-L5 and moderately severe degenerative changes at L5-S1 with minimal facet arthropathy and small marginal osteophytes. (Tr. 297). On physical examination, Plaintiff had reduced range of motion in his shoulder and back secondary to pain, but experienced no sensory loss and retained full muscle strength. (Tr. 445, 482-83, 1260).

The ALJ also found that Plaintiff's activities of daily living were inconsistent with his alleged impairments. That finding is also supported by the record evidence. Plaintiff testified that he cared for his elderly mother, drove on a daily basis, and was able to perform household chores, run errands, and care for his personal needs. (Tr. 25-26, 57, 243-44, 246). While not dispositive, the ALJ may consider activities such as these as evidence undermining a claimant's allegations of disabling limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p, 1996 WL 374186 at *3-7 (S.S.A.); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)("The regulations do not [] prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process").

Finally, the court notes that, as a general matter, Plaintiff does not directly challenge the ALJ's articulated reasons, but instead largely repeats his subjective complaints of pain. (*See* Pl.'s Mem. at 14-17). It is obvious that Plaintiff disagrees with the ALJ's credibility determinations. But the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's allegations, which were supported by substantial evidence; therefore, the ALJ's credibility determination is due to be affirmed.

## VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this September 9, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE